UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>XAVIER RAPHAEL JENKINS,<br><br>Defendant. | Case No. 3:17-cr-00124<br>Chief Judge Crenshaw<br>Magistrate Judge Newbern |

### MEMORANDUM

This matter came before the undersigned magistrate judge on the United States' motion for detention of Defendant Xavier Raphael Jenkins pending trial. (Doc. Nos. 27, 65, 70.) Jenkins has been indicted on one charge of assault resulting in serious bodily injury in aid of racketeering under 18 U.S.C. §§ 2 and 1959(a)(3). (Doc. No. 3.) A hearing was held on July 7, 2017, at which the Court heard testimony and considered documentary evidence and the parties' arguments. At the conclusion of that hearing, the Court invited the parties to submit additional briefing on the significance of alleged gang membership in the analysis prescribed by 18 U.S.C. § 3142(g). The United States and Jenkins filed supplemental briefs addressing that issue which the Court has also considered. (Doc. Nos. 74, 75, 76, 82.)

The Court also gives weight to the report of the Office of Probation and Pretrial Services, which recommends that Jenkins be detained.

For the following reasons and those stated on the record in the Court's July 12, 2017 hearing, the United States' motion for detention is DENIED.

## I. Statutory Framework

A defendant may be detained pending trial only upon the Court's finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court's finding that no combination of conditions will reasonably assure the community's safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding of risk of flight must be supported by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F. 3d 939, 945 (6th Cir. 2010); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.")

In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## II. Findings of Fact

The United States offered evidence in support of its motion through the testimony of Bureau of Alcohol Tobacco and Firearms Special Agent Todd Stacy. Stacy has participated in the investigation leading to Jenkins's indictment since June 2017. He based his testimony on his personal knowledge and on information obtained from other investigating agents.

Stacy testified that Jenkins's indictment came as the result of a multi-year investigation of the Gangster Disciples in Middle Tennessee. Stacy described the Gangster Disciples as a violent street gang that engages in criminal activities including murder, assault, and narcotics trafficking. Stacy testified that the Gangster Disciples operate nationally and have a hierarchical leadership structure. Gangster Disciples members attend meetings and pay dues that are used in furtherance of the gang's criminal activities and to support gang members.

Stacy testified that Jenkins was identified as a member of the Gangster Disciples through witness interviews and gang dues and telephone rosters that list Jenkins as a member in 2007, 2008, and 2012. Stacy further testified that Jenkins held a position of authority in the gang as its literature coordinator. In this role, Jenkins kept the gang history and instructed new gang members in its rules and tenets. Stacy testified that he believes Jenkins also administered "smashings," or disciplinary actions taken against other gang members, although he did not provide specific testimony on this point.

Regarding Jenkins's indicted charge, Stacy testified that, on November 3, 2012, co-defendant and alleged Gangster Disciples leader Brandon Hardison was attacked by members of the Bloods gang. Hardison then called Jenkins and other Gangster Disciples members and asked them to meet him at C-Ray's, a bar where Bloods were known to congregate. Jenkins answered the call and met Hardison at the bar. Jenkins, Hardison, and others entered the bar and assaulted a person identified as M.W. Jenkins is alleged to have punched M.W. several times in the ensuing brawl. Co-defendant and alleged Gangster Disciples member Maurice Duncan Burks pulled a gun

and shot M.W., killing him.[1] Stacy testified that an eyewitness identified Jenkins as participating in the fight but not the shooting.

The United States introduced three photographs of Jenkins. The first shows Jenkins with alleged members of the Gangster Disciples making gang hand signs. Jenkins is shown making a pitchfork hand sign, which Stacy testified is used to indicate Gangster Disciples membership. (Gov. Ex. 1.) The photograph is not dated. A second undated photograph shows Jenkins standing on a porch. (Gov. Ex. 4.) Co-defendant and alleged Gangster Disciples leader Marcus Darden is seated behind Jenkins. The third photograph, dated May 31, 2009, shows Darden with his arm around Jenkins. (Gov. Ex. 5.) The United States also introduced a statement from the inmate trust account of incarcerated co-defendant and alleged Gangster Disciples member Rex Andrew Whitlock. (Gov. Ex. 2.) The statement shows that Jenkins deposited $40.00 in Whitlock's account through Western Union in April 2017. Stacy testified that a "benefit of membership" in the Gangster Disciples is that gang funds are distributed to members while they are incarcerated. Stacy did not testify that the money used in this transaction came from Gangster Disciples funds or was deposited for that reason.

Finally, Stacy testified regarding the circumstances of Jenkins's 2013 arrest for possession of a weapon with intent to go armed. Stacy testified that Jenkins was pulled over for a vehicle window tint violation. Co-defendant and alleged Gangster Disciples member DeCarlos Tittington was a passenger in the car. When asked by the officer if there were any drugs or guns in the car, Jenkins stated that the car belonged to his girlfriend and that there was a gun in the glove compartment that belonged to her. The resulting charge was dismissed.

---

[1] Burks is charged with murder in aid of racketeering; using, carrying or possessing a firearm during an din relation to a crime of violence; and causing death through the use of a firearm in separate counts of the indictment. (Doc. No. 3, PageID# 31–32.)

Jenkins did not call any witnesses. Instead, Jenkins's counsel proffered that, upon learning a warrant had been issued for his arrest on the indicted charge, Jenkins immediately contacted law enforcement and turned himself in. In supplemental briefing, Jenkins submitted proof of his master barber license (Doc. No. 74-1) and a letter from his employer at the Faded Empire Barbershop (Doc. No. 76.) In the letter, Jenkins's employer states that Jenkins is a "key holder" who opens and closes the shop, handles "substantial amounts of cash," and is a valued employee "who has never proven to be untrustworthy." (*Id.*) Counsel proffered that Jenkins would be able to keep working at this job if released pending trial. Jenkins's employer was present at the July 12, 2017 hearing and confirmed Jenkins's continued employment. Jenkins's mother, Terri Jenkins, also appeared at the July 12, 2017 hearing and affirmed to the Court her willingness to fulfill all the duties of serving as a third-party custodian for her son.

The report of the Office of Probation and Pre-Trial Services states that Jenkins has spent his whole life in Middle Tennessee. He lives in his mother's home with several relatives and has lived there for three years. He is a high-school graduate and earned his master barber's license from Queen City College. The criminal history provided shows that Jenkins was arrested in 2007 and convicted of a misdemeanor charge of simple possession or casual exchange of marijuana for which he was sentenced to eleven months and twenty-nine days of probation. He was also arrested in 2007 on a charge of possession of less than .5 grams of cocaine and sentenced to eight years of post-trial diversion probation. Jenkins successfully completed the diversion program and his counsel proffered that this offense is eligible to be expunged. Jenkins's criminal record also shows arrests in 2006, 2011, and 2013 on charges that were dismissed. He was charged with driving on a suspended license in May 2017. That offense remains pending.

## III. Analysis

In light of the testimony and evidence presented, the undersigned considers each of the factors of 18 U.S.C § 3142(g) in turn as follows:

### A. The Nature and Circumstances of the Offense Charged

Jenkins is named in an eleven-defendant, forty-count indictment charging an extensive racketeering conspiracy run by the Gangster Disciples gang. (Doc. No. 3.) The conspiracy is alleged to include overt acts of murder, assault, drug trafficking, and obstruction of justice, and Jenkins's co-defendants are subject to sentences up to and including the death penalty. (*Id.*) The full extent of the alleged conspiracy is very serious indeed.

Importantly, however, Jenkins is not named as a member of the conspiracy. (Doc. No. 3, PageID# 9–26.) He is a defendant to only one count of the indictment, which charges him with committing assault resulting in serious bodily injury for the purpose of maintaining or increasing position in the Gangster Disciples gang. (*Id.* at PageID# 32.) As presented by Stacy, Jenkins responded to Hardison's call asking Gangster Disciples members to retaliate against the Bloods gang and participated in the clash that followed by punching the victim. Jenkins is not charged with the victim's murder. The assault alone, however, is a crime of violence and its commission is a threat to public safety. It is a serious offense that, if proved, could result in a sentence for Jenkins of twenty years and a fine of $250,000.00. The facts presented also tend to demonstrate Jenkins's willingness at the time of the assault to act in aid of the Gangster Disciples, in that Jenkins joined the assault at the behest of alleged Gangster Disciples leader Hardison and the assault was made to avenge a gang-related dispute.

This factor weighs in favor of detention.

**B. The Weight of the Evidence Against Jenkins**

This factor addresses "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948.

Again, there is no question that assault is a dangerous offense and a willingness to commit assault on behalf of a gang heightens the degree of dangerousness. The Grand Jury found probable cause to indict Jenkins on this offense. Stacy also testified that an eyewitness identified Jenkins as participating in the brawl. Stacy further testified that he believed Jenkins had participated in "smashings," or beatings of other Gangster Disciples members for rule infractions, although he gave no specific evidence of "smashings" committed by Jenkins.

Jenkins did not contest the United States' assertion that he is or has been a member of the Gangster Disciples or Stacy's testimony that Jenkins held the position of literature coordinator within his Gangster Disciples chapter. Stacy testified that, as literature coordinator, Jenkins was responsible for maintaining the gang's history and educating new members in the gang's rules. Stacy testified that Jenkins was listed on the Gangster Disciples' rolls in 2007, 2008, and 2012. He is identified in the indictment as having participated in meetings with other Gangster Disciples members in each of those years.

There is no question that gang membership is a factor to be considered in the detention determination. The Court requested briefing from counsel on the weight that factor should be given in Jenkins's case. Counsel identified cases that the Court finds stand for two general propositions. First, leaders of a gang or other criminal enterprise who direct or control the actions of others and defendants who are alleged co-conspirators with gang

leaders can be considered participants in the full extent of the gang's criminal actions, even if specific overt acts are not ascribed to them. *See United States v. Ciccone*, 312 F.3d 535, 539 (2d Cir. 2002) (noting Second Circuit de facto rule that, "where the [G]overnment has demonstrated that a defendant is a leader of an organized crime family . . . the defendant is dangerous because inherent in the leadership position is the supervision of criminal activity that cannot be curtailed by any condition or combination of conditions of release"); *United States v. Colombo*, 777 F.2d 96, 97 (2d Cir. 1985) (finding detention warranted for head of criminal "crew" who approved all criminal activity by its members); *United States v. Flores-Ortiz*, Criminal No. 15-605 (PAD), 2015 WL 7574765, at *6 (D. Puerto Rico November 25, 2015) (attributing dangerousness of criminal enterprise run by Puerto Rico Police Department to defendant because of his leadership role as Sergeant and Lieutenant during the span of the conspiracy); *United States v. Barnett*, No. 5:03-CR-243(NAM), 2003 WL 22143710, at *2 (N.D.N.Y. Sept. 17, 2003) (finding defendants indicted as racketeering co-conspirators in the Boot Camp gang to be criminally responsible for acts committed by other members and associates because they had adopted the goal of furthering the gang's criminal enterprise); *United States v. DiGiacomo*, 746 F.Supp. 1176, 1188 (D. Mass. 1990) (finding defendant's position as Capo in Mafia family "to be the most weighty evidence favoring his detention" because he is "in a position within the Mafia to both receive and issue orders").

Second, evidence of gang membership or association with persons involved in a gang or other criminal enterprise *without* allegations of conspiracy or leadership does not ascribe the full extent of the gang's conduct to an individual defendant. In such a circumstance, gang membership should be considered as an individualized factor with the

others prescribed by 18 U.S.C. § 3142(g). *See United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988) (finding, in presumption case under § 3142, that "generalized evidence" of gang associations "is simply insufficient to furnish the mainstay of an order of pretrial detention").

Here, the specific allegations of Jenkins's criminal acts in furtherance of the Gangster Disciples enterprise begin and end with the 2012 assault. He is not named as a defendant to the indictment's RICO charge or alleged to be a co-conspirator with other named defendants. (Doc. No. 3.) He is not named in any other charge of the indictment.[2] (*Id.*) The testimony regarding Jenkins's position as literature coordinator does not indicate that he directed other gang members' criminal activities, although he is alleged to have indoctrinated new members in the gang's rules and administered disciplinary "smashings." And, unlike defendants in other cases where gang membership was a significant consideration under § 3142(g), Jenkins's criminal history does not indicate that he has participated in other violent acts on behalf of the gang. *See generally United States v. Graewe*, 689 F.2d 54, 58 (6th Cir. 1982) (noting testimony of defendant's involvement in two retaliatory murders and indictment on charges of participating in criminal enterprise involving murder and threats to murder witnesses and FBI agents in detention decision); *United States v. Bruno*, 89 F.Supp.3d 425, 431 (E.D.N.Y. 2015) (noting extensive criminal history and incitement on fifteen criminal counts including murder and causing death through use of a firearm in detention decision of associate of La Cosa Nostra organized crime family). On these facts, the Court considers Jenkins's gang membership as an

---

[2] Jenkins is named in twelve overt acts in furtherance of the conspiracy. Each of these acts is attendance at a Gangster Disciples meeting in 2007, 2008, or 2012. (Doc. No. 3.)

individual factor contributing to his potential dangerousness, but does not ascribe to Jenkins the acts of other Gangster Disciples or the extent of the alleged criminal enterprise.

The United States correctly argues that the Court may "consider a broad array of evidence of a particular defendant's dangerousness, including evidence not related to crimes with which the defendant is charged." (Doc. No. 82, PageID# 481 n.1.) Here, Jenkins's criminal history is minimal. It includes a misdemeanor conviction for possession of marijuana for which Jenkins was sentenced to probation and a felony conviction for possession of less than .5 grams of cocaine for which Jenkins was sentenced to post-trial diversion. Both arrests were made in 2007. The felony conviction is now eligible to be expunged. Charges stemming from arrests in 2006, 2011, and 2013 were all dismissed. A 2017 charge for driving on a suspended license remains pending. There was no evidence that Jenkins has committed other violent acts or has otherwise been a danger to the community.

The most recent evidence on which the United States relies is the $40.00 deposit made to the prison account of co-defendant Whitlock in April 2017. The United States asserts this is evidence of Jenkins's continued willingness to carry out the gang's business, citing a general "benefit of membership" that Gangster Disciples may have gang dues provided to them in prison. But the United States offered no evidence that Jenkins made this deposit for that purpose or that the funds came from the gang's reserves.

Taken as a whole, the weight of the evidence of Jenkins's dangerousness is a neutral factor in the Court's analysis.

### C. Jenkins's History and Characteristics

The Court must also consider Jenkins's individual history and characteristics, including, among other factors, his character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history. 18 U.S.C. § 3142(g)(3)(A)–(B).

As discussed above, Jenkins's criminal history is relatively minimal: a misdemeanor conviction for possession of marijuana and a felony conviction for possession of less than .5 grams of cocaine for which Jenkins completed post-trial diversion. The criminal history shows two probation violations associated with the felony conviction. The first was dismissed, and Jenkins was returned to post-trial diversion and probation after being found guilty of the second. However, although no violation was noted, the alleged 2012 assault also took place while Jenkins was on probation.

Jenkins has strong ties to Middle Tennessee, where he has spent his life and now lives with his family. His mother has agreed to serve as his third-party custodian. Jenkins is a high-school graduate and holds a professional master barber's license. He has worked at the same job for four years and his employer has confirmed to the Court that Jenkins can return to that job if released. Jenkins has no history of substance abuse.[3] Finally, Jenkins's counsel proffered evidence that, when Jenkins learned of the warrant for his arrest in this case, he immediately contacted law enforcement and turned himself in for arrest.

---

[3]  In supplemental briefing, the United States submitted evidence that Jenkins is a rapper and has posted videos online in which he raps about selling drugs and embracing a "thug's life." (Doc. No. 75, PageID# 469–70.) In its argument, the United States concedes Jenkins's right to free expression. (*Id.*) The Court agrees and does not consider this evidence in its analysis.

Taking the evidence of Jenkins's history and characteristics as a whole, this factor weighs against detention.

**D. The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed By Jenkins's Release**

The evidence presented tends to show that, in 2012, Jenkins engaged in a violent assault to aid the Gangster Disciples. Although there was unrebutted testimony that Jenkins held a position of authority as the gang's literature coordinator, there was no evidence presented that Jenkins directed other members' conduct or ordered any criminal activity. He is not alleged to have engaged in any criminal activity since the 2012 assault. He is not alleged to have possessed a weapon or used a weapon in furtherance of any criminal act. He is not alleged to have participated in any narcotics trafficking on the gang's behalf. His criminal history stems from two decade-old arrests. His only felony conviction is eligible to be expunged.

Absent Jenkins's connection to the Gangster Disciples, there would be little argument that he should be detained pending trial. The Court finds that his association with the Gangster Disciples does not overcome the presumption of pretrial release because Jenkins is not named as a member of the indicted conspiracy, is not alleged to have directed the criminal acts of Gangster Disciples members, and, other than the indicted 2012 assault, has no history of committing crimes or violent acts on the gang's behalf. For these reasons, the Court finds that the danger Jenkins may present to any person or the community is of a nature and seriousness that may be controlled by conditions of release.

This factor weighs against detention.

**IV. Conclusion**

Based upon the evidence and argument presented, the Court finds that the United States has not met its burden to show by a preponderance of the evidence that Jenkins is a

risk of flight. Although the United States offered some testimony that Gangster Disciples operate safe houses and that the gang could help Jenkins abscond, that generalized testimony does not rebut the specific evidence that Jenkins contacted law enforcement and turned himself in on the charged offense or that he successfully completed probation and a post-trial diversion program in state court. That evidence supports a finding that Jenkins is not likely to flee if released pending his trial on this charge.

The Court further finds that the United States has not met its burden to show by clear and convincing evidence that detention is required because Jenkins poses a danger to others or the community. Again, while the United States has presented evidence that the Gangster Disciples are a dangerous criminal enterprise, it has not shown that Jenkins will be a danger to the community if released. The Court further finds that there are conditions of release it can impose that will control any risk of danger that Jenkins might present. Those conditions include GPS monitoring, a curfew, and a restriction from any contact, direct or indirect, with persons known to be members of the Gangster Disciples, including any co-defendant in this case.

For these reasons and those stated on the record in the Court's July 12, 2017 hearing, the United States' motion is DENIED. A separate order setting Jenkins's conditions of release has been issued. (Doc. No. 85.)

Entered this 13th day of July, 2017.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge